JUDGE KATHLEEN CARDONE

FILED

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

2010 AUG 18  PM 4: 28

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ENRIQUE GUAJARDO LOPEZ,** | ) |
| **a/k/a "Kiki,"** | ) |
| | ) |
| **Defendant.** | ) |

S E A L E D
**INDICTMENT**

**CRIMINAL NO.**

**CT 1:**  18 U.S.C. § 1962(d); Conspiracy to
Conduct the Affairs of an Enterprise
through a Pattern of Racketeering Activity.
**CTS 2-3:**  18 U.S.C. § 1959(a)(1); Murder in
Aid of Racketeering Activity.
**CT 4:**  18 U.S.C. § 1117; Conspiracy to
Murder an Employee of the United States.
**CT 5:**  18 U.S.C. § 1114; Murder of an
Employee of the United States.
**CT 6:**  18 U.S.C. § 115; Murder of a Family
Member of an Employee of the United
States.
**CT 7:**  18 U.S.C. 924(c); Use and Carrying
of Firearms During and in Relation to a
Crime of Violence.
**CTS 8-9:**  18 U.S.C. § 924(j); Murder
Resulting from the Use and Carrying of a
Firearm During and in Relation to a Crime
of Violence.

# EP 10 CR 2213

THE GRAND JURY CHARGES:

## INTRODUCTION

### THE RACKETEERING ENTERPRISE
### The "Barrio Azteca" Enterprise

1.  At all times relevant to this Indictment, in the Western District of Texas, and

elsewhere, the defendant,

**ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"**

and others were members and associates of a criminal organization engaged in murder, attempted

murder, conspiracy to commit murder, extortion, money laundering, importation of controlled substances, and distribution of controlled substances and possession with the intent to distribute controlled substances.  At all relevant times, this organization has operated in the Western District of Texas and elsewhere, and has been and is known as the Barrio Azteca(s) and will be referred to hereinafter in this indictment as the "Barrio Azteca" or "BA."  The BA, including its leadership, membership, and associates constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise")  that is to say, a group of individuals associated in fact.  The enterprise was engaged in and its activities affected interstate and foreign commerce, and constituted an on-going organization.  The BA criminal enterprise is an illegal association in fact entity.   The BA, also known as "Familia Azteca" was formed in 1986 by inmates located primarily in the Texas Department of Criminal Justice (TDCJ) prison system.   The purpose of the BA was to unite inmates that were native to the El Paso, Texas, and West Texas area.  The original members of the BA created a charter or rules, also known as "sacred rules," which set out a command structure, or hierarchy of ranks and their authority. These rules provide for a mechanism for promotion, demotion and replacement of ranking members within the BA.   The BA leadership ranks are the following: The Capo Mayor, Captains, Lieutenants, Sergeants and Soldiers, also known as "indios."  It is the responsibility of the soldier to carry out the orders of the ranking membership.  BAs refer to one another as "carnal."  A person wishing to join the BA is called a "prospecto," or "esquina."

## Purpose of the Enterprise

2.      The purpose of the enterprise included the following:

a.      Enriching the members and associates of the enterprise through, among other things, murder, assault, extortion, money laundering, and distribution of narcotics.

b.   Preserving and protecting the power, territory, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder.

c.   Promoting and enhancing the enterprise and its members' and associates' activities.

d.   Keeping victims and others in fear of the enterprise and in fear of its members and associates through violence and threats of violence.

3.   The BA has expanded its sphere of influence to include the TDCJ, the Federal Bureau of Prisons (BOP), and various cities in West Texas and Ciudad Juarez, Chihuahua, Mexico.   The BA has also entered into an alliance with the Vicente Carrillo-Fuentes drug trafficking organization (VCFDTO) in Juarez, Mexico.   As part of this alliance, BA members import, export and transport controlled substances, as well as conduct enforcement operations for the VCFDTO. The VCFDTO in exchange pays the BA for these services, or provides the BA with controlled substances at discount prices.   The BA has further subdivided its enterprise and developed geographical groups to better serve the criminal aims of the organization.   These groups include the cities of Juarez, Mexico and El Paso, Midland, and Odessa, Texas.   Each of these geographical groups has some autonomy in deciding how it will achieve its criminal aims, but always within the framework and rules of the overarching BA criminal enterprise.   The city of El Paso, Texas, is further subdivided into different subsections similar to the political subdivisions in the city, such as Central, Westside, Northeast, Eastside, Lower Valley, Horizon, and Socorro.

4.   In furtherance of the enterprise, BA members collect a street tax, also known as "cuota," "quota," "renta," or "taxes."   The proceeds from the "cuota" are used to support members of the BA who are arrested, to pay for lawyers, bail bonds, fines, and any other fee associated with legal proceedings.   The proceeds from the "cuota" are also used to purchase money orders, which are mailed through the United States Postal Service (USPS) to inmate

accounts.   The proceeds are also reinvested back into the BA enterprise activities for the purchase of assets, commodities, and other property that are related to the day-to-day function of the BA, including firearms, ammunition, and controlled substances.

### Manner and Means of the Conspiracy

### Rules

5.     The original BA members developed a vocabulary, sacred rules, and chain of command. These rules direct BA members to be loyal, obey, protect, and serve the "family" as dictated by ranking members.  New members are introduced to these rules by their "Padrinos," or individuals who serve as mentors for the new prospects entering the criminal enterprise.  BA members are bound by a strict set of rules that ensure loyalty and participation in the enterprise's criminal activities.   The rules require that a member must continue his participation in the organization after being released from prison.  Membership is for life, and loyalty to the BA and its members take precedence over any other relationship.  A violation of the BA rules or orders may result in harsh penalties, including death.  An order to carry out a punishment involving assault or murder is commonly referred to as a "green light" or "X."   A "calentada" is a less severe form of punishment involving some lesser form of assault.   The strict rules and harsh discipline governing the BA help insure that members and associates will function as a continuing unit, despite any changes in leadership or membership.

6.     It is a common practice for some, but not necessarily all, BA members to have BA tattoos.  These tattoos commonly include the letters "B A" or "21" or the corresponding roman numeral "XXI," as a numerical representation of the letters "B" and "A."  Other tattoos include the numbers "915," a reference to the El Paso, Texas, area code, and "El Paso Texas." Many BA members also obtain tattoos representing aspects of the ancient Aztec culture, such as Aztec warriors, calendars, and temples, among others.

7.      The BA rules provide that loyalty to the BA or "Familia" is paramount and superior to loyalties to God, country, family, or friends.  All BA members are expected to know the rules of the BA and strictly abide by them.    It is understood that BA members may be chosen to undertake a particular task, including murder and other criminal activity.  The target of a particular order may be a fellow BA, blood relative, friend, or other associate of the person who is given the order.   Regardless of the intended victim, or possible consequences, an order must be carried out by the BA members chosen for the task.   If the BA member does not carry out the task, typically referred to as a "Jale" or job, he will be subject to disciplinary actions by the BA enterprise.

### Communications

8.      BA members who are incarcerated throughout the United States and Mexico continue to participate in the operations of the BA criminal enterprise from their prison cells by communicating through letters, telephone calls, and prison visits with other BA members and associates, friends, and family members.  The BA leadership controls all BA members who are incarcerated in the United States and Mexico, as well as those BA members operating outside the prison system, which BA members and associates sometimes refer to as the "free world."

9.      The BA enterprise utilizes the United States Postal Service ("USPS") to send and receive letters between BA members who are in prison and those who are in the "free world." The BA membership mails its directives using U.S. and Mexican postal services.  The letters written by BA members are written in English, Spanish, or a combination of the two languages. These letters are sometimes called "kites" or "whilas."   BA members will often utilize an individual as a conduit to receive or send letters from another BA member or associate.  These conduits are called "bridges." The conduits will sometimes use fictitious names and addresses to send and receive letters and money orders to BA members who are incarcerated.   The use of

these conduits is intended to prevent law enforcement from finding out the identities or source of the true correspondents and the final destination of the letters.

10.     BA members also use telephone communications to discuss BA enterprise affairs. BA members who are incarcerated coordinate telephone calls with BA members and associates to give out orders.     The BA enterprise uses intrastate, interstate and foreign telephone communication facilities to further the affairs of the BA enterprise.

11.     Coded language is frequently utilized in written and oral BA communications, in order to mislead law enforcement as to the true message contained in the communication.   The BA will also change the code or create transaction-specific codes to thwart law enforcement. Examples of BA coded language include "X'ed out" (former BA member), "green light" (authorization to assault or murder), and "tienda" (quota paying associate). A BA member who has fallen out of favor might be referred to in the feminine tense or as an "X." The BA will also use pseudonyms or fictitious names and addresses in letters and during oral communications.

12.     The BA holds meetings on a regular basis to discuss BA criminal enterprise business. These meetings typically call for the membership of a particular area or subdivision to attend. Some meetings will only be attended by key members. The frequency of these meetings is determined on an "as needed" basis.   A meeting may be held to read and explain a letter from a captain giving the BA in the "free world" certain orders or directives.

## COUNT ONE
### (RICO CONSPIRACY)
18 U.S.C. § 1962(d)

13.     The allegations set forth in Paragraphs 1 through 12 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

14.    Beginning on or about January 1, 2005, and continuing thereafter, through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the defendant,

**ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"**

and others known and unknown, being persons employed by and associated with the Barrio Azteca enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together, and with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is to say, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts indictable under the following provisions of federal law:

a.    21 U.S.C. §§ 846, 841(a)(1), 952 and 963 (involving narcotics trafficking; conspiracy to commit narcotics trafficking, including heroin, cocaine and marijuana; and narcotics importation);

b.    18 U.S.C. § 956(a)(1) (involving conspiracy to kill in a foreign country); and

c.    18 U.S.C. § 1114 (murder of an employee of the United States).

It was further part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## OVERT ACTS

15.    In furtherance of the conspiracy and as part of the manner and means of the enterprise and to effect the objects thereof, at least one of the co-conspirators herein committed one or more of the following overt acts, among others, in the Western District of Texas and elsewhere.

16.     In or around April of 2010, **ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"** and others known and unknown to the grand jury traveled to Chihuahua, Mexico, to open new drug sales points for the BA.

17.     On or about March 13, 2010, **ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"** and others known and unknown to the Grand Jury murdered Leslie Ann Enriquez Catton, an employee of the United States Consulate, in Ciudad Juarez, Chihuahua, Mexico

18.     On or about March 13, 2010, **ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"** and others known and unknown to the Grand Jury murdered Arthur Redelfs, the spouse of Leslie Ann Enriquez Catton, an employee of the United States Consulate, in Ciudad Juarez, Chihuahua, Mexico.

19.     On or about March 13, 2010, BA members known and unknown to the Grand Jury murdered Jorge Alberto Salcido Ceniceros, the spouse of Hilda Edith Antillon Jimenez, an employee of the United States Consulate, in Ciudad Juarez, Chihuahua, Mexico.

NOTICE OF SPECIAL SENTENCING FACTORS

20.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the defendant, **ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"** with premeditation and malice aforethought did kill Leslie Ann Enriquez Catton, an employee of the United States Consulate, in Ciudad Juarez, Chihuahua, Mexico, on account of the performance of her official duties, in violation of Title 18, United States Code, Sections 1114 and 2.

21.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the defendant, **ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"** knowingly and intentionally conspired with others known and unknown to the Grand Jury, to commit at any place outside of the United States, namely, Mexico, an act that would constitute murder if committed in the special maritime and territorial jurisdiction of the United States and did commit an act within the

jurisdiction of the United States to effects an object of that conspiracy, in violation of Title 18, United States Code, Section 956(a)(1).

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

(Murder in Aid of Racketeering Activity)
18 U.S.C. § 1959(a)(1) and (2)

22.     Beginning on or about January 1, 2005, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, the Barrio Azteca, as more fully described in Paragraphs 1 through 12 of this Indictment, which are realleged and incorporated by reference as if fully set forth herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the Barrio Azteca enterprise, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

23.     At all times relevant to this indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b)(1) and 1961(1), namely acts involving narcotics trafficking in violation of Title 21, United States Code, Sections 846, 841(a)(1),  952, and 963, and acts involving murder in violation of Texas Penal Code §19.02(b).

24.     On or about March 13, 2010, in the Western District of Texas, and elsewhere, the defendant,

**ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"**

together with others known and unknown to the Grand Jury, for the purpose of maintaining and increasing position in Barrio Azteca, an enterprise engaged in racketeering activity, unlawfully and knowingly murdered Leslie Ann Enriquez Catton, in violation of Title 18, United States Code, Section 1114.

All in violation of Title 18, United States Code, Section 1959(a)(1) and 2.

## COUNT THREE
(Murder in Aid of Racketeering Activity)
18 U.S.C. § 1959(a)(1) and (2)

25.     The allegations set forth in Paragraphs 22 and 23 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

26.     On or about March 13, 2010, in the Western District of Texas, and elsewhere, the defendant,

## ENRIQUE GUAJARDO LOPEZ, a/k/a "Kikio,"

together with others known and unknown to the Grand Jury, for the purpose of maintaining and increasing position in Barrio Azteca, an enterprise engaged in racketeering activity, unlawfully and knowingly murdered Arthur Redelfs, in violation of Title 18, United States Code, Section 1114.

All in violation of Title 18, United States Code, Section 1959(a)(1) and 2.

## COUNT FOUR
(Conspiracy to Murder an Employee of the United States)
18 U.S.C. § 1117

The Grand Jury further charges:

27.     The allegations set forth in Paragraphs 1 through 12 and 15 through 19 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

28.    From on or about March 1, 2010, and continuing up to and including March 13, 2010, in the Western District of Texas and elsewhere, the defendant,

**ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"**

knowingly combined, conspired, confederated, and agreed with others known and unknown to the Grand Jury, to kill with premeditation and malice aforethought, an employee of the United States Consulate, in Ciudad Juarez, Chihuahua, Mexico, in violation of Title 18, United States Code, Section 1114.

In violation of Title 18, United States Code, sections 1117.

## COUNT FIVE
(Murder of an Employee of the United States)
18 U.S.C. § 1114

The Grand Jury further charges:

29.    The allegations set forth in Paragraphs 1 through 12 and 15 through 19 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

30.    On or about March 13, 2010, in the Western District of Texas and elsewhere, the defendant,

**ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"**

with premeditation and malice aforethought attempted and did unlawfully kill Leslie Ann Enriquez Catton, an employee of the United States Consulate, in Ciudad Juarez, Chihuahua, Mexico, on account of the performance of her official duties.

In violation of Title 18, United States Code, Sections 1114, 1111, and 2.

## COUNT SIX

(Murder of a Family Member of an Employee of the United States)
18 U.S.C. § 115

The Grand Jury further charges:

31.    The allegations set forth in Paragraphs 1 through 12 and 15 through 19 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

32.    On or about March 13, 2010, in the Western District of Texas and elsewhere, the defendant,

**ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"**

with premeditation and malice aforethought attempted and did unlawfully kill a member of the immediate family of an employee of the United States Consulate in Ciudad Juarez, Chihuahua, Mexico, that is, Arthur Redelfs, the spouse of Leslie Ann Enriquez Catton, with intent to retaliate against Leslie Ann Enriquez Catton on account of the performance of her official duties.

In violation of Title 18, United States Code, Sections 115, 1114, and 2.

## COUNT SEVEN
(Use and Carrying of Firearms During and in Relation to a Crime of Violence)
18 U.S.C. 924(c)

The Grand Jury further charges:

33.    Paragraphs 1 through 12 of the introduction to this indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

34.    On or about March 13, 2010, in the Western District of Texas, and elsewhere, the defendant,

**ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"**

together with others known and unknown to the Grand Jury, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, murder of a federal employee and family members of federal employees and murder in aid of racketeering activity, as set forth in Counts Two through Six of this Indictment, which are incorporated herein.

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT EIGHT

(Murder Resulting From the Use and Carrying of Firearms During and in Relation to a Crime of Violence)

18 U.S.C. 924(j)

The Grand Jury further charges:

35.     Paragraphs 1 through 12 of the introduction to this indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

36.     On or about March 13, 2010, in the Western District of Texas, and elsewhere, the defendant,

## ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"

together with others known and unknown to the Grand Jury, in the course of committing a violation of 18 U.S.C. § 924(c) as set forth in Count Seven of this Indictment, which is incorporated herein, did cause the death of a person through the use of firearms, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is, Leslie Ann Enriquez Catton, willfully, deliberately, and maliciously.

In violation of Title 18, United States Code, Sections 924(j) and 2.

## COUNT NINE

(Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of
Violence)
18 U.S.C. 924(j)

The Grand Jury further charges:

37.    Paragraphs 1 through 12 of the introduction to this indictment, which are re-
alleged and incorporated by reference as though set forth fully herein.

38.    On or about March 13, 2010, in the Western District of Texas, and elsewhere, the
defendant,

### ENRIQUE GUAJARDO LOPEZ, a/k/a "Kiki,"

together with others known and unknown to the Grand Jury, in the course of committing a
violation of 18 U.S.C. § 924(c) as set forth in Count Seven of this Indictment, which is
incorporated herein, did cause the death of a person through the use of firearms, which killing is
a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought,
unlawfully killed a human being, that is, Arthur Redelfs, willfully, deliberately, and maliciously.

In violation of Title 18, United States Code, Sections 924(j) and 2.

/

/

/

/

/

/

A TRUE BILL

_____

FOREPERSON OF THE GRAND JURY

JOHN E. MURPHY
UNITED STATES ATTORNEY

BY: _____
    Jose Luis Acosta
    Assistant U.S. Attorney

LANNY A. BREUER
ASSISTANT ATTORNEY GENERAL

BY: _____
    Brian Skaret
    Trial Attorney
    United States Department of Justice
    Criminal Division, Human Rights and Special Prosecutions Section

_____
    Joseph A. Cooley
    Trial Attorney
    United States Department of Justice
    Criminal Division, Gang Unit

15