**FILED**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FEB 0 9 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| JOSE ANTONIO ACOSTA HERNANDEZ, | ) |
| a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," | ) |
| a/k/a "Bablazo," | ) |

**S E A L E D**
**SECOND SUPERSEDING**
**INDICTMENT**

CRIMINAL NO.  EP10CR2213

<u>CT 1</u>:  18 U.S.C. § 1962(d); Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering Activity.

<u>CT 2</u>:  21 U.S.C. § 846; Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances.

<u>CT 3</u>:  21 U.S.C. § 963; Conspiracy to Import Controlled Substances.

<u>CT 4</u>:  18 U.S.C. § 1956(h); Conspiracy to Launder Monetary Instruments.

<u>CT 5</u>:  18 U.S.C. § 956(a)(1); Conspiracy to Kill Persons in a Foreign Country.

<u>CT 6-8</u>:  18 U.S.C. § 924(c) & (j); Murder Resulting from the Use and Carrying of a Firearm During and in Relation to Crimes of Violence and Drug Trafficking.

<u>CTS 9-11</u>:  18 U.S.C. § 1959(a)(1); Murder in Aid of Racketeering Activity.

<u>CTS 12</u>:  18 U.S.C. § 1512(c)(1); Obstruction of Justice.

**Defendants.**  )
)

THE GRAND JURY CHARGES:

## INTRODUCTION

### THE RACKETEERING ENTERPRISE
### The "Barrio Azteca" Enterprise

1.     At all times relevant to this Second Superseding Indictment, in the Western

District of Texas and elsewhere, the defendants,


**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**


and others known and unknown were members and associates of a criminal organization

engaged in murder, attempted murder, conspiracy to commit murder, extortion, money

laundering, importation of controlled substances, and distribution of controlled substances and

possession with the intent to distribute controlled substances.  At all relevant times, this

organization has operated in the Western District of Texas and elsewhere, and has been and is

2

known as the Barrio Azteca(s) and will be referred to hereinafter in this Second Superseding

indictment as the "Barrio Azteca" or "BA." The BA, including its leadership, membership, and

associates constituted an "enterprise," as defined by Title 18, United States Code, Section

1961(4) (hereinafter "the enterprise"), that is to say, a group of individuals associated in fact.

The enterprise was engaged in and its activities affected interstate and foreign commerce, and

constituted an ongoing organization. The BA criminal enterprise is an illegal association in fact

entity. The BA, also known as "Familia Azteca," was formed in 1986 by inmates located

primarily in the Texas Department of Criminal Justice (TDCJ) prison system. The purpose of

the BA was to unite inmates that were native to the El Paso, Texas, and West Texas area. The

original members of the BA created a charter or rules, also known as "sacred rules," which set

out a command structure, or hierarchy of ranks and their authority. These rules provide for a

mechanism for promotion, demotion, and replacement of ranking members within the BA. The

BA leadership ranks are the following: the Capo Mayor, Captains, Lieutenants, Sergeants, and

Soldiers, also known as "indios." It is the responsibility of the soldier to carry out the orders of

the ranking membership. BA members refer to one another as "carnal." A person wishing to

join the BA is called a "prospecto," or "esquina."

## Purposes of the Enterprise

2.     The purposes of the enterprise included the following:

   a.   Enriching the members and associates of the enterprise through, among
        other things, murder, assault, extortion, money laundering, and
        distribution of narcotics;

   b.   Preserving and protecting the power, territory, and profits of the enterprise
        through the use of intimidation, violence, threats of violence, assaults, and
        murder;

   c.   Promoting and enhancing the enterprise and its members' and associates'
        activities; and

      d.     Keeping victims and others in fear of the enterprise and in fear of its
members and associates through violence and threats of violence.

3.     The BA has expanded its sphere of influence to include the TDCJ, the Federal

Bureau of Prisons (BOP), and various cities in West Texas and Ciudad Juarez, Chihuahua,

Mexico. The BA has also entered into an alliance with the Vicente Carrillo-Fuentes drug

trafficking organization (VCFDTO) in Ciudad Juarez, Chihuahua, Mexico. As part of this

alliance, BA members import, export, and transport controlled substances, as well as conduct

enforcement operations, for the VCFDTO. The VCFDTO in exchange pays the BA for these

services, or provides the BA with controlled substances at discount prices. The BA has further

subdivided its enterprise and developed geographical groups to better serve the criminal aims of

the organization. These groups include, but are not limited to, the cities of Ciudad Juarez and

Chihuahua City, Chihuahua, Mexico, and El Paso, Midland, and Odessa, Texas. Each of these

geographical groups has some autonomy in deciding how it will achieve its criminal aims, but

always within the framework and rules of the overarching BA criminal enterprise. The City of

Ciudad Juarez, Chihuahua, Mexico, is further subdivided into difference sectors that include:

Benito Juarez, Chihuahua, Delicias, Aldama, Zaragoza, and Babicora. The city of El Paso,

Texas, is also subdivided into different subsections similar to the political subdivisions in the

city, such as: Central, Northeast, Eastside, Lower Valley, Horizon, Socorro and Westside. The

Westside of El Paso also consists of areas of New Mexico, from Sunland Park through Las

Cruses.

4.     In furtherance of the enterprise, BA members collect a street tax, also known as

"cuota," "quota," "renta," or "taxes." The proceeds from the "cuota" are used to support

members of the BA who are arrested, to pay for lawyers, bail bonds, fines, and any other fee

associated with legal proceedings. The proceeds from the "cuota" are also used to purchase

money orders, which are mailed through the United States Postal Service (USPS) to inmate accounts. The proceeds are also reinvested back into the BA enterprise activities for the purchase of assets, commodities, and other property that are related to the day-to-day function of the BA, including firearms, ammunition, and controlled substances.

### Manner and Means of the Conspiracy

### Rules

5. The original BA members developed a vocabulary, sacred rules, and chain of command. These rules direct BA members to be loyal, obey, protect, and serve the "family" as dictated by ranking members. New members are introduced to these rules by their "Padrinos," or individuals who serve as mentors for the new prospects entering the criminal enterprise. BA members are bound by a strict set of rules that ensure loyalty and participation in the enterprise's criminal activities. The rules require that a member must continue his participation in the organization after being released from prison. Membership is for life, and loyalty to the BA and its members take precedence over any other relationship. A violation of the BA rules or orders may result in harsh penalties, including death. An order to carry out a punishment involving assault or murder is commonly referred to as a "green light" or "X." A "calentada" is a less severe form of punishment involving some lesser form of assault. The strict rules and harsh discipline governing the BA help insure that members and associates will function as a continuing unit, despite any changes in leadership or membership.

6. It is a common practice for some, but not necessarily all, BA members to have BA tattoos. These tattoos commonly include the letters "B A" or "21" or the corresponding roman numeral "XXI," as a numerical representation of the letters "B" and "A." Other tattoos include the numbers "915," a reference to the El Paso, Texas, area code, and "El Paso Texas."

Many BA members also obtain tattoos representing aspects of the ancient Aztec culture, such as Aztec warriors, calendars, and temples, among others.

7.      The BA rules provide that loyalty to the BA or "Familia" is paramount and superior to loyalties to God, country, family, or friends.  All BA members are expected to know the rules of the BA and strictly abide by them.  It is understood that BA members may be chosen to undertake a particular task, including murder and other criminal activity.  The target of a particular order may be a fellow BA member, blood relative, friend, or other associate of the person who is given the order.   Regardless of the intended victim, or possible consequences, an order must be carried out by the BA member chosen for the task.   If the BA member does not carry out the task, typically referred to as a "jale" or job, he will be subject to disciplinary actions by the BA enterprise.

## Communications

8.      BA members who are incarcerated throughout the United States and Mexico continue to participate in the operations of the BA criminal enterprise from their prison cells by communicating through letters, telephone calls, and prison visits with other BA members and associates, friends, and family members.  The BA leadership controls all BA members who are incarcerated in the United States and Mexico, as well as those BA members operating outside the prison system, which BA members and associates sometimes refer to as the "free world."  The BA enterprise utilizes the USPS to send and receive letters between BA members who are in prison and those who are in the "free world."  The BA membership mails its directives using U.S. and Mexican postal services.  The letters written by BA members are written in English, Spanish, or a combination of the two languages.  These letters are sometimes called "kites" or "whilas."  BA members will often utilize an individual as a conduit to receive or send letters

from another BA member or associate.  These conduits are called "bridges."  The conduits will sometimes use fictitious names and addresses ("bridge addresses") to send and receive letters and money orders to BA members who are incarcerated.  The use of these conduits is intended to prevent law enforcement from finding out the identities or source of the true correspondents and the final destination of the letters.

9.      BA members also use telephone communications to discuss BA enterprise affairs. BA members who are incarcerated coordinate telephone calls with BA members and associates to give out orders.  The BA enterprise uses intrastate, interstate, and foreign telephone communication facilities to further the affairs of the BA enterprise.

10.     Coded language is frequently utilized in written and oral BA communications, in order to mislead law enforcement as to the true message contained in the communication.  The BA will also change the code or create transaction-specific codes to thwart law enforcement. Examples of BA coded language include "X'ed out" (former BA member), "green light" (authorization to assault or murder), and "tienda" (quota paying associate).  A BA member who has fallen out of favor might be referred to in the feminine tense or as an "X."  The BA will also use pseudonyms or fictitious names and addresses in letters and during oral communications.

11.     The BA holds meetings on a regular basis to discuss BA criminal enterprise business.  These meetings typically call for the membership of a particular area or subdivision to attend.  Some meetings will be attended by only key members.  The frequency of these meetings is determined on an "as needed" basis.  A meeting may be held to read and explain a letter from a captain giving the BA in the "free world" certain orders or directives.

## COUNT ONE
(RICO Conspiracy)
18 U.S.C. § 1962(d)

12.     The allegations set forth in Paragraphs 1 through 11 of this Second Superseding Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

13.     Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this Second Superseding Indictment, both dates being approximate and inclusive, within the Western District of Texas and elsewhere, the defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

being persons employed by and associated with the Barrio Azteca enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together, and with others known and unknown to the Grand

8

Jury, to violate Title 18, United States Code, Section 1962(c), that is to say, to conduct and

participate, directly and indirectly, in the conduct of the affairs of that enterprise through a

pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title

18, United States Code, consisting of multiple acts indictable under the following provisions of

federal law:

    a.    21 U.S.C. §§ 841(a)(1), 846, 952 and 963 (involving trafficking and importation of narcotics and conspiracies to commit trafficking and importation of narcotics, including heroin, cocaine, and marijuana);

    b.    18 U.S.C. § 956(a)(1) (involving conspiracy to kill in a foreign country);

    c.    18 U.S.C. § 1503 (involving obstruction of justice);

    d.    18 U.S.C. § 1513 (involving retaliation against a person providing information to United States law enforcement);

    e.    18 U.S.C. §§ 1956 (a)(1)(A)(i), (B)(i), (2)(A), (B)(i) and (h) (involving conspiracy to launder monetary instruments); and

    f.    18 U.S.C. § 924(j) (involving murder resulting from the use and carrying of firearms during and in relation to crimes of violence and drug trafficking).

14.    It was further part of the conspiracy that the defendants agreed that a conspirator

would commit at least two acts of racketeering activity in the conduct of the affairs of the

enterprise.

## OVERT ACTS

15.    In furtherance of the conspiracy and as part of the manner and means of the

enterprise and to effect the objects thereof, at least one of the co-conspirators herein committed

one or more of the following overt acts, among others, in the Western District of Texas and

elsewhere:

a)    From on or about January 1, 2003, and continuing until the date of this Second Superseding Indictment, BA members and associates known and unknown to the Grand Jury, possessed with the intent to distribute heroin, cocaine, and marijuana.

b)    From on or about January 1, 2003, and continuing until the date of this Second Superseding Indictment, BA members and associates known and unknown to the Grand Jury, distributed heroin, cocaine, and marijuana.

c)    From in or about January 1, 2003, and continuing until the date of this Second Superseding Indictment, BA members and associates known and unknown to the Grand Jury, transported heroin, cocaine, and marijuana from Mexico into the Western District of Texas for distribution.

d)    From on or about January 1, 2003, and continuing until the date of this Second Superseding Indictment, BA members and associates known and unknown to the Grand Jury, caused to be deposited into the commissary accounts of BA members known and unknown to the Grand Jury, who were incarcerated in prison facilities located in the United States.

e)    On or about December 6, 2003, a BA member, incarcerated in a U.S. federal prison facility, and a BA associate, both known to the Grand Jury, had a telephone conversation. The BA associate told the BA member that there were personnel changes in Ciudad Juarez, Chihuahua, Mexico. The BA associate stated that the new leadership in Ciudad Juarez, Chihuahua, Mexico, was providing money to be forward to prison commissary accounts located in the United States.

f)    On or about July 28, 2004, during a telephone conversation between a BA member, incarcerated in a U.S. federal prison facility, and a BA associate known to the Grand Jury, the BA member stated that he was recently transferred to the Bureau of Prisons facility in

Pollock, Louisiana, with other BA members.  The BA member gave to the BA associate his

mailing address and instructed her to tell

to send him money.  The BA associate also to the told BA member that she also was

trying to contact           to ask him for money to send to another BA member, known to the

Grand Jury, who was incarcerated in a prison facility located within the United States.

     g)     On or about July 30, 2004, a BA associate and BA member, incarcerated in a U.S.

federal prison facility, both known to the Grand Jury, had a telephone conversation. The BA

member told the BA associate that he wrote a letter to

but had not received a response in return.  The BA member also told the

BA associate that another BA member, known to the Grand Jury, was going to be transferred to a

prison facility in Marion, Illinois.

     h)     On or about July 31, 2004, a BA associate and BA member, incarcerated in a U.S.

federal prison facility, both known to the Grand Jury, had a telephone conversation. The BA

associate told the BA Member that she met with

and passed on the BA member's information to           , and that           was

going to send the BA member some money.  The BA member and associate discussed an

indictment containing references to "money orders."  The BA associate told BA member that she

talked to           about the references to money orders in the indictment.  The BA member

asked the BA associate to provide           with a copy of the indictment and discovery

material.  The BA member discussed how the information regarding cooperating persons was

redacted to hide information relating to cooperating BA members.  The BA member asked the BA associate if she passed on certain information to                , and whether his letter arrived. The BA member asked the BA associate to find out if money had been sent to him.

       i)     On August 9, 2004, two BA members, one incarcerated in a U.S. federal prison facility and the other in Ciudad Juarez, Chihuahua, Mexico, both known to the Grand Jury, had two separate telephone conversations.  During these conversations, the BA members discussed problems with drug trafficking and the need to restructure the BA leadership.

       j)     In or about August 2005, BA members known and unknown to the Grand Jury, kidnapped a person in El Paso, Texas, and later transported him against his will to Ciudad Juarez, Chihuahua, Mexico.

       k)     From in or about the late fall of 2005 and continuing until the date of this Second Superseding Indictment,                          and other BA members and associates received vehicles in Ciudad Juarez, Chihuahua, Mexico, that were registered and insured in the United States for purposes of stealing the vehicles and facilitating insurance fraud.

       l)     From in or about the late fall of 2005 and continuing until the date of this Second Superseding Indictment,                          and other BA members and associates purchased guns and ammunition located in the Western District of Texas.

       m)     From in or about the late fall of 2005 and continuing until the date of this Second Superseding Indictment,                          and other BA members and associates received guns and ammunition in Ciudad Juarez, Chihuahua, Mexico, from the Western District of Texas.

       n)     On or about August 14, 2006, a BA member, incarcerated in a U.S. state prison facility, known to the Grand Jury, mailed a letter addressed to "Sally Cardoza" – a bridge.  In the

letter, the BA asked why money had not been sent as previously directed.   The BA member also asked about a person who wanted to open a "tienda" without having to pay the "cuota."

o)      On or about September 15, 2006, a BA associate, known to the Grand Jury, possessed with the intent to distribute approximately 18 pounds of heroin, while traveling in a bus through Kansas City, Missouri, destined for New York, New York.

p)      On or about November 8, 2006, a BA member, known to the Grand Jury, delivered approximately 82.75 kilograms of cocaine, in El Paso, Texas.

q)      On or about December 6, 2006, a BA member killed Jose Luis Oviedo in El Paso, Texas, by shooting Jose Luis Oviedo with a gun.

r)      On or about March 26, 2007, a BA member, known to the Grand Jury, arrived in El Paso, Texas, from New York, New York, with $20,000.00 in U.S. currency concealed in luggage.

s)      On or about April 12, 2007, a BA member, known to the Grand Jury, discussed over the telephone the sale/purchase of 47 lbs. of marijuana with a male person.

t)      On or about April 13, 2007, two BA members, known to the Grand Jury, discussed over the telephone the sale/purchase of 10 kilograms of cocaine.

u)      On or about April 19, 2007, a BA member, known to the Grand Jury, discussed over the telephone the sale/purchase of 150 lbs. of marijuana with various persons.

v)      On or about May 8, 2007, a BA member, known to the Grand Jury, discussed over the telephone the sale/purchase of 3 kilograms of cocaine with an unidentified person.

w)      On or about May 14, 2007, BA members, known to the Grand Jury, discussed over the telephone the sale/purchase of 4 kilograms of cocaine.

x)     On or about May 15, 2007, a BA member, known to the Grand Jury, discussed over the telephone the sale/purchase of 1 kilogram of cocaine with an unidentified person.

y)     On or about May 25, 2007, a BA member, known to the Grand Jury, discussed over the telephone the sale/purchase of 1 kilogram of cocaine with an unidentified person.

z)     On or about May 28, 2007, a BA member, known to the Grand Jury, discussed over the telephone the sale/purchase of a kilogram of cocaine with an unidentified person.

aa)     On or about May 29, 2007, a BA member, known to the Grand Jury, discussed during a series of telephone calls the sale of 100 lbs. of marijuana with an unidentified person.

bb)     On or about May 30, 2007, a BA member, known to the Grand Jury, discussed over the telephone the sale/purchase of 2 kilograms of cocaine with an unidentified person.

cc)     In or about the summer of 2007, BA members known and unknown to the Grand Jury, kidnapped a person in El Paso, Texas, and later transported him against his will Ciudad Juarez, Chihuahua, Mexico.

dd)     From at least 2007, and continuing until the date of this Second Superseding Indictment,                           **JOSE ANTONIO ACOSTA HERNANDEZ,**  a/k/a **"Diego,"** a/k/a **"Dienton,"** a/k/a **"Diez,"** a/k/a **"Bablazo,"**

and other BA members and associates monitored radios they used to conduct criminal business.

ee)     From at least 2007, and continuing until the date of this Second Superseding Indictment,                                             **JOSE ANTONIO ACOSTA HERNANDEZ, a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

and other BA members and associates used radios to communicate with others.

ff)     On or about March 13, 2010, in Juarez, Mexico,

called a person unknown to the Grand Jury, in the Western District of Texas, and received verification of the description of a person who was targeted to be murdered.

gg)     On or about March 13, 2010,

**JOSE ANTONIO ACOSTA HERNANDEZ, a/k/a "Diego," a/k/a**

"Dienton," a/k/a "Diez," a/k/a "Bal·lazo,"

"

and other BA members

and associates directed others to the location of a person who was targeted to be murdered.

hh)     On or about March 13, 2010,

JOSE ANTONIO ACOSTA HERNANDEZ, a/k/a "Diego," a/k/a "Dienton,"

a/k/a "Diez," a/k/a "Bablazo,"

and other BA members and associates, caused Leslie

Ann Enriquez Catton, an employee of the United States Consulate, to be shot and killed in

Ciudad Juarez, Chihuahua, Mexico.

ii)     On or about March 13, 2010,

**JOSE ANTONIO ACOSTA HERNANDEZ,   a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

and other BA members and associates, caused Arthur Redelfs, the spouse of Leslie Ann Enriquez Catton, an employee of the United States Consulate, to be shot and killed in Ciudad Juarez, Chihuahua, Mexico.

jj)     On or about March 13, 2010,

**JOSE ANTONIO ACOSTA HERNANDEZ,   a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

and other BA members and associates, caused Jorge Alberto Salcido Ceniceros, the spouse of Hilda Edith Antillon Jimenez, an employee of the United States Consulate, to be shot and killed in Ciudad Juarez, Chihuahua, Mexico.

kk)     On or about March 13, 2010,                              and others attempted to destroy one of the vehicles used in the killing of Jorge Alberto Salcido Ceniceros.

ll)     On or about August 12, 2010, BA members kidnapped the wife and parents of another BA member who they believed was cooperating with United States law enforcement.

mm)    On or about August 12, 2010, BA members murdered the step-daughter of another BA member who they believed was cooperating with United States law enforcement.

## NOTICE OF SPECIAL SENTENCING FACTORS

16.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the defendants,                                                    **JOSE ANTONIO ACOSTA HERNANDEZ,   a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

knowingly conspired with others known and unknown to the Grand

18

Jury, to commit at any place outside of the United States, namely, Mexico, an act that would

constitute murder if committed in the special maritime and territorial jurisdiction of the United

States and did commit an act within the jurisdiction of the United States to effect an object of

that conspiracy, in violation of Title 18, United States Code, Section 956(a)(1).

     17.    On or about March 13, 2010, in the Western District of Texas and elsewhere, the

defendants,                                              **JOSE**

did knowingly carry, use, and discharge firearms during and in

relation to crimes of violence and drug trafficking for which they may be prosecuted in a court of

the United States, causing the death of a person through the use of a firearm, which killing is a

murder as defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought,

unlawfully killed human beings, that are, Leslie Ann Enriquez Catton,  Arthur Redelfs, and Jorge

Alberto Salcido Ceniceros willfully, deliberately, maliciously, and with premeditation.

     18.    From in or about January 1, 2003, and continuing until the date of this Second

Superseding Indictment, in the Western District of Texas and elsewhere, the defendants,

JOSE ANTONIO ACOSTA

HERNANDEZ,   a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"

, conspired to distribute, possess with the intent to distribute, and import into the United States, five kilograms or more of cocaine, one kilogram or more of heroin, and one thousand kilograms or more of marijuana, in violation of Title 21, United States Code, Sections 846, 841(a), and 841(b)(1)(A) and 963, 952, and 960(b)(1)(A), (B), and (G).

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

(Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Cocaine and Marijuana)
21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(A)(i) and (ii) and (vii)

The Grand Jury further charges:

19.     Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this Second Superseding Indictment, both dates being approximate and inclusive, within the Western District of Texas and elsewhere, the Defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

knowingly, and  intentionally conspired, combined, confederated, and agreed together, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a controlled substance, which offense involved one kilogram or more of a mixture or substance

containing a detectable amount of heroin, a Schedule II Controlled Substance, with intent to distribute same, and they conspired to possess a controlled substance, which offense involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, with intent to distribute same, and they conspired to possess a controlled substance, which offense involved 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I Controlled Substance.

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and 841(b)(1)(A)(i) and (ii) and (vii).

## COUNT THREE
(Conspiracy to Import Heroin, Cocaine and Marijuana)
21 U.S.C. §§ 963, 952, and 960(b)(1)(A), (B), and (G)

The Grand Jury further charges:

20.     Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this Second Superseding Indictment, both dates being approximate and inclusive, within the Western District of Texas and elsewhere, the Defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

knowingly, and  intentionally conspired, combined, confederated, and agreed together, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 963, that is to say, they conspired to import controlled substance, which offense involved one kilogram or more of a mixture or substance

containing a detectable amount of heroin, a Schedule II Controlled Substance, with intent to distribute same, and they conspired to possess a controlled substance, which offense involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, with intent to distribute same, and they conspired to possess a controlled substance, which offense involved 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I Controlled Substance.

All in violation of Title 21, United States Code, Sections 963, 952, and 960(b)(1)(A), (B), and (G).

## COUNT FOUR
(Conspiracy to Launder Monetary Instruments)
18 U.S.C. §§ 1956 (a)(1)(A)(i)(B)(i) and (h)

21.   Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this Second Superseding Indictment, both dates being approximate and inclusive, within the Western District of Texas and elsewhere, the Defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

knowingly and intentionally conspired, combined, confederated and agreed together with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i), that is to say they conspired to conduct and attempt to conduct a financial transaction, affecting interstate and foreign commerce, knowing that the property in the financial transaction

represented the proceeds of some form of unlawful activity, to-wit; conspiracy to obtain monetary instruments by extortion, having been induced by the wrongful use of actual and threatened force, violence and fear and conspiracy to possess with the intent to distribute a controlled substance, and did so with the intent to promote the carrying on of the specific unlawful activity, and knowing that the financial transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i)(B)(i) and (h).

## COUNT FIVE
(Conspiracy to Kill Persons in a Foreign Country)
18 U.S.C. § 956(a)(1)

The Grand Jury further charges:

22.    The allegations set forth in Paragraphs 1 through 11 and 15(a) through 15(mm) of this Second Superseding Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

23.    From on or about March 1, 2010, and continuing up to and including on or about March 13, 2010, in the Western District of Texas and elsewhere, the defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

knowingly combined, conspired, confederated, and agreed together, and with others known and unknown to the Grand Jury, within the jurisdiction of the United States, to kill Leslie Ann Enriquez Catton, Arthur Redelfs, and Jorge Alberto Salcido Ceniceros in Ciudad Juarez,

Chihuahua, Mexico, which act would constitute the offense of murder, in violation of Title 18, United States Code, Section 1111, if committed in the special maritime and territorial jurisdiction of the United States, and a co-conspirator did commit an act within the jurisdiction of the United States to affect an object of the conspiracy.

All in violation of Title 18, United States Code, Section 956(a)(1).

## COUNT SIX
(Murder Resulting From the Use and Carrying of Firearms
During and in Relation to Crimes of Violence and Drug Trafficking)
18 U.S.C. §§ 924(c), (j) and 2

The Grand Jury further charges:

24.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

together with others known and unknown to the Grand Jury, did knowingly carry, use, and

discharge firearms during and in relation to crimes of violence and drug trafficking for which

they may be prosecuted in a court of the United States, that is, Conspiracy to Commit

Racketeering Activity, Conspiracy to Distribute and Possess with the Intent to Distribute

Controlled Substances, Conspiracy to Import Control Substances and Conspiracy to Kill a

Person in a Foreign Country, as set forth in Counts One through Three, and Five, respectively, of

this Second Superseding Indictment, causing the death of a person through the use of a firearm, which killing is a murder as defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is, Leslie Ann Enriquez Catton, willfully, deliberately, maliciously, and with premeditation.

All in violation of Title 18, United States Code, Sections 924(c), (j) and 2.

## COUNT SEVEN
(Murder Resulting From the Use and Carrying of Firearms
During and in Relation to Crimes of Violence and Drug Trafficking)
18 U.S.C. §§ 924(c), (j) and 2

The Grand Jury further charges:

25.    On or about March 13, 2010, in the Western District of Texas and elsewhere, the

defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,
a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

together with others known and unknown to the Grand Jury, did knowingly carry, use, and

discharge firearms during and in relation to crimes of violence and drug trafficking for which

they may be prosecuted in a court of the United States, that is, Conspiracy to Commit

Racketeering Activity, Conspiracy to Distribute and Possess with the Intent to Distribute

Controlled Substances, Conspiracy to Import Control Substances and Conspiracy to Kill a

Person in a Foreign Country, as set forth in Counts One through Three, and Five, respectively, of

this Second Superseding Indictment, causing the death of a person through the use of a firearm, which killing is a murder as defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, Arthur Redelfs, willfully, deliberately, maliciously, and with premeditation.

All in violation of Title 18, United States Code, Sections 924(c), (j) and 2.

## COUNT EIGHT
(Murder Resulting From the Use and Carrying of Firearms
During and in Relation to Crimes of Violence and Drug Trafficking)
18 U.S.C. §§ 924(c), (j) and 2

The Grand Jury further charges:

26.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the

defendants,

### JOSE ANTONIO ACOSTA HERNANDEZ,
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

together with others known and unknown to the Grand Jury, did knowingly carry, use, and

discharge firearms during and in relation to crimes of violence and drug trafficking for which

they may be prosecuted in a court of the United States, that is, Conspiracy to Commit

Racketeering Activity, Conspiracy to Distribute and Possess with the Intent to Distribute

Controlled Substances, Conspiracy to Import Control Substances and Conspiracy to Kill a

Person in a Foreign Country, as set forth in Counts One through Three, and Five, respectively, of

this Second Superseding Indictment, causing the death of a person through the use of a firearm, which killing is a murder as defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is, Jorge Alberto Salcido Ceniceros, willfully, deliberately, maliciously, and with premeditation.

All in violation of Title 18, United States Code, Sections 924(c), (j) and 2.

## COUNT NINE
(Murder in Aid of Racketeering Activity)
18 U.S.C. §§ 1959(a)(1) and 2

The Grand Jury further charges:

27.     Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this Second Superseding Indictment, both dates being approximate and inclusive, the Barrio Azteca, as more fully described in Paragraphs 1 through 11 of this Second Superseding Indictment, which are realleged and incorporated by reference as if fully set forth herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the Barrio Azteca enterprise, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

28.     At all times relevant to this Second Superseding Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts indictable under Title 18, United States Code, Section 924(j) (murder resulting from the use and carrying of firearms during and in relation to crimes of violence and drug trafficking), acts indictable under Title 18, United States Code, Section 956(a)(1) (conspiracy to kill persons in a foreign country) acts indictable under Title 18, United States Code, Section 1503 (obstruction of justice), acts in violation of Title 18, United States Code, Section 1513 (retaliation against a person providing information to the United States law enforcement), acts indictable under Title 18, United States

Code, Section 1956(h) (conspiracy to launder monetary instruments), and acts indictable under Title 21, United States Code, Sections 846 and 963 (conspiracies to traffic drugs).

29.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

together with others known and unknown to the Grand Jury, for the purpose of maintaining and increasing position in the Barrio Azteca, an enterprise engaged in racketeering activity, unlawfully and knowingly murdered Leslie Ann Enriquez Catton, in violation of Title 18, United States Code, Section 924(j).

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT TEN
(Murder in Aid of Racketeering Activity)
18 U.S.C. §§ 1959(a)(1) and 2

The Grand Jury further charges:

30.     The allegations set forth in Paragraphs 27 and 28 of this Second Superseding

Indictment are realleged and incorporated by reference as if fully set forth herein.

31.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the

defendants,

### JOSE ANTONIO ACOSTA HERNANDEZ,
a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"

together with others known and unknown to the Grand Jury, for the purpose of maintaining and

increasing position in Barrio Azteca, an enterprise engaged in racketeering activity, unlawfully

and knowingly murdered Arthur Redelfs, in violation of Title 18, United States Code, Section

924(j).

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT ELEVEN
(Murder in Aid of Racketeering Activity)
18 U.S.C. §§ 1959(a)(1) and 2

The Grand Jury further charges:

32.     The allegations set forth in Paragraphs 27 and 28 of this Second Superseding

Indictment are realleged and incorporated by reference as if fully set forth herein.

33.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the

defendants,

**JOSE ANTONIO ACOSTA HERNANDEZ,**
**a/k/a "Diego," a/k/a "Dienton," a/k/a "Diez," a/k/a "Bablazo,"**

together with others known and unknown to the Grand Jury, for the purpose of maintaining and

increasing position in Barrio Azteca, an enterprise engaged in racketeering activity, unlawfully

and knowingly murdered Jorge Alberto Salcido Ceniceros, in violation of Title 18, United States

Code, Section 924(j).

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT TWELVE
(Obstruction of Justice)
18 U.S.C. § 1512(c)(1)

The Grand Jury further charges:

34.     On or about March 13, 2010, in the Western District of Texas and elsewhere, the

defendant,

together with others known and unknown to the Grand Jury, corruptly destroyed, mutilated, and

concealed objects, and attempted to do so, with the intent to impair the objects' integrity and

availability for use in an official proceeding, by burning a vehicle used in the murder of Jorge

Alberto Salcido Ceniceros as described in Counts One, Five, Eight and Eleven above.

In violation of Title 18, United States Code, Section 1512(c)(1).

A TRUE BILL. ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002

_____
FOREPERSON OF THE GRAND JURY

JOHN E. MURPHY
UNITED STATES ATTORNEY

_____
Jose Luis Gonzalez
Assistant United States Attorney

LANNY A. BREUER
ASSISTANT ATTORNEY GENERAL

_____
Brian D. Skaret
Trial Attorney
United States Department of Justice
Criminal Division, Human Rights and
Special Prosecutions Section

_____
Joseph A. Cooley
Trial Attorney
United States Department of Justice
Criminal Division, Gang Unit

39